### GARDINIER vs. KELLOGG, and others.

A being indebted to B & Co. on a draft over due, it was agreed between him and
    them and his attorney, who was prosecuting a suit to obtain an assignment
    to A of certain notes and a mortgage for nearly the same amount as the draft,
    that the attorney should proceed to compel such assignment, and then collect
    the notes and apply the proceeds to the payment of the draft, which was left
    with him for that purpose by the creditors. *Held,* that the transaction was
    not a sale of the notes to B & Co., and that after they were assigned to A,
    the latter could maintain an action in his own name for the foreclosure of the
    mortgage. A, being the legal owner of the notes, may be regarded as a
    trustee of an express trust, within the meaning of the statute.
The complaint of A for the foreclosure of said mortgage, alleged that he was
    the owner and holder of the notes, and the answer was that the notes had
    been transferred, before suit brought, to B & Co., and that A had no interest
    in them. *Held,* that the objection that the complaint contained no aver-
    ment of the trust, and that there was consequently a variance between the
    pleading and the proof, (if good at any time,) comes too late in this court.
If that averment were necessary, and the objection for the variance had been
    taken at the trial, the court should have ordered an immediate amendment,
    or have found the facts in accordance with the evidence.
Proof having been given on the trial that A had stated that he had sold the
    notes to B & Co., and that they owned them, the attorney of A, who was
    present at the supposed sale, was a competent witness for the plaintiff, to
    show the real nature of the transaction.

APPEAL from the Circuit Court for *Milwaukee* County.
Action commenced in February, 1860, to foreclose a mort-
gage given to secure the payment of two notes, for $250

each, made payable to one Scott, and alleged to have been assigned by him to one Stone, and by Stone sold to Butler, and by Butler and Stone assigned to the plaintiff. The complaint averred that the plaintiff was the holder and owner of the notes. Answer, that the notes and mortgage had been transferred and delivered, before the commencement of the suit, to Hoard & Sons, a firm in New York, who were still the sole owners thereof, and that the plaintiff had not, at the time the suit was commenced or the answer filed, any interest in the notes.

On the trial, the defendant testified that the plaintiff told him before the suit was commenced, that he had sold the notes to parties east, and after the suit was brought told him that Hoard & Sons owned the notes; that he then wrote to Hoard & Sons stating that he was informed that they were the owners of the notes, and requesting an extension of the time of payment, to which they replied that they needed the money, but were disposed to accommodate him, and referred the matter to their attorney, L. Hubbell, Esq., of Milwaukee. The letter and reply were produced by the witness. Mr. Hubbell, as a witness for the plaintiff, testified, that in the spring of 1859, one of the firm of Hoard & Sons called upon him with a draft (which the witness exhibited) for about $490, payable to their order, drawn by the plaintiff *Gardinier* and past due; that the witness had been employed by *Gardinier* in a suit against Stone and Butler, and a judgment had been obtained, determining the right of *Gardinier* to the notes and mortgage which are the subject of this suit, and directing an assignment of them by Stone and Butler to *Gardinier*; that it was agreed between Hoard and *Gardinier* and the witness, that the witness should take the draft and hold it, and should go on and enforce the judgment against Stone and Butler, and apply the proceeds of the notes (less witness's lien for $50) to the payment of the draft; that the notes and mortgage were afterwards assigned by Stone and Butler to *Gardinier* in pursuance of the judgment, and were placed in the witness's hands, which was all the assignment of the notes and mortgage which had ever been made to the Hoards, to the knowl-

June Term,
1861.

GARDINIER
v.
KELLOGG et al.

edge of the witness. This testimony was objected to by the defendant, and the objection overruled. On cross examination, Mr. Hubbell said : "The Hoards became the owners of the mortgage before the commencement of this suit, so far as they became the owners at all. I told Mr. Kellogg that the Hoards were the parties interested in this mortgage ; perhaps I told him they were the owners of it." Finding and judgment for the plaintiff; to which exceptions were duly taken.

*Coon, Cotton & Gay,* for appellants, argued that the testimony of Mr. Hubbell had relation to a transaction between the plaintiff and third parties, and was inadmissible ; that if the plaintiff sought to maintain the action on the ground that he was trustee of an express trust, he should have so averred his title in the complaint ; and that when a negotiable note is delivered by the holder to his creditor or the creditor's attorney, with power to collect and apply the proceeds to the payment of a liability already due, and of which payment has been demanded, it is not a delivery as a pledge contingent upon a condition *in futuro,* but is a valid assignment of the note, and passes title *pro tanto;* the party receiving it becomes the *holder,* and entitled in law to receive the contents. Byles on Bills, 2.

*Levi Hubbell,* for respondent :

There was no transfer or delivery of the notes and mortgage to the Hoards ; no price paid or agreed to be paid, and therefore no sale or change of property. *Gardinier* was to collect the notes and apply the net proceeds on his debt to the Hoards. If the Hoards became the equitable owners, *Gardinier* took the legal title for their use, and was a trustee of an express trust. It was not necessary that the complaint should *aver* that he held the notes and mortgage as a trustee. *Grinnell vs. Schmidt,* 2 Sandf., 706 ; *Bright vs. Currie,* 5 id., 433 ; *People vs. Norton,* 5 Seld., 176 ; *Merritt vs. Seaman,* 2 id., 168.

*By the Court,* DIXON, C. J. The action was properly instituted in the name of the present plaintiff. There was no sale of the notes and mortgage to the Hoards. The parties

did not intend a sale. The transaction was in the nature of a pledge, and differed from the ordinary contract only in this, that the pledgees had no right to sell, but, through their attorney, who was likewise the attorney of the pledgor, were to proceed to the collection of the notes, and to apply the proceeds in payment of their debt. All pledges are not necessarily subject to the same incidents or conditions. The contract may be modified by the express stipulation of the parties, and where such stipulations are made, they must govern. In case of the pledge of a chose in action it is competent for them to agree that it shall be collected and the moneys realized appropriated to the satisfaction of the principal demand. And such, we think, was the nature of the agreement in this case. Hubbell, the mutual attorney and agent was to collect the notes and mortgage, and, after deducting the sum due to himself, apply the proceeds to the payment of the draft which he likewise held. This was not a transfer of the ownership of the notes and mortgage to the Hoards. They acquired a special property or lien, which was no doubt available, if not at law certainly in equity; but the general property or legal title remained in the plaintiff. There was to be no discharge or abatement of his liability upon the draft until the money was realized. The notes and mortgage were a mere security, and if, at any time, he had paid the draft, they would have become his absolute property without any further act, which shows that his legal title was never divested. It is not true, therefore, that he has no interest in this action. He is interested in the notes and mortgage as much as ever, for until they are collected, his liability to pay the draft continues. It was doubtless contemplated that the collection would go on in his name, and being the legal owner he may properly be denominated a trustee of an express trust within the meaning of the statute.

The objection that the complaint contains no averment of the trust, and consequently that there was a fatal variance between the pleading and proofs—if such objection would have been good at any time (*vide* 2 Sandf., 706; 5 id., 433; 2 Seld., 168; and 5 id., 176)—comes too late. No such ground of objection was taken in the court below. The de-

fendant went to trial and rested his defense upon an endeavor to show that the plaintiff had *no* such interest as would enable him to maintain the action. Were the averment necessary, and had the objection been taken at the trial, there can be no doubt that the court would have ordered an immediate amendment, or have found the fact in accordance with the evidence, since it could not have been claimed that the defendant was actually misled to his prejudice by the proof of a fact which he had set up and insisted upon in his answer. R. S., chap. 125, secs. 33, 34.

*June Term, 1861.*

*Ford v. Ch. & N. W. R. R. Co.*

The testimony of the witness Hubbell is not obnoxious to the charge of hearsay, or of relating to transactions between the plaintiff and third parties which could not affect the rights of the defendant. The defendant, in support of his answer, had testified to the admissions of the plaintiff that he had sold the notes and mortgage to Hoard & Sons. The admissions were but presumptive evidence of the facts admitted, and as such were liable to be explained and rebutted. The witness was present at the supposed sale, and his testimony went directly to the facts themselves concerning which the defendant sought to raise a presumption by force of the admissions. It was clearly competent for the plaintiff, by this *original* evidence, to show the real nature of the transaction by way of explaining and repelling the presumption arising from the admissions.

The judgment of the circuit court is affirmed, with costs.